United States District Court
Eastern District of Texas

**FILED**
JUN 29 2018
Clerk, U.S. District Court
Texas Eastern

) Craig Cunningham
) Plaintiff, Pro-se
)
) v.   CIVIL ACTION NO. _____
)
) National Association for Medical and Dental, Inc., Health Care National Marketing, Inc., Sherri Paules, Tommie Lane, Christine Lane
) Defendants.

**Plaintiff's Original Complaint**

1. The Plaintiff in this case is Craig Cunningham, a natural person and was resident of Collin County at all times relevant to the complaint, and currently has a mailing address of 3000 Custer Road, ste 270-206, Plano, Tx 75075

2. HealthCare National Marketing, Inc. is a Florida corporation that can be served via registered agent Tommie Lane, 3072 Wentworth Way, Tarpon Springs, FL 34688

3. National Association for Medical and Dental, Inc., is an Florida corporation that can be served via registered agent Sherri Faith Paules, 5396 School Road, New Port Richey, FL 34652 or 7740 Lachlan Dr. Trinity, FL 34655.

4. Tommie Lane is a natural person and corporate officer of the above corpations. He can be served at 3072 Wentworth Way, Tarpon Springs, FL 34688 or 5396 School Road, New Port Richey, FL 34652.

5. Christine Lane is a natural person and corporate officer who can be served at 5396 School Road, New Port Richey, FL 34652.

1

6. Sherri Faith Paules, is a natural person and can be served at 5396 School Road, New Port Richey, FL 34652 or 7740 Lachlan Dr. Trinity, FL 34655.

7. John and Jane Does are defendants that are also liable parties that have yet to be identified.

## Jurisdiction

8. Jurisdiction of this court arises as the acts happened in this county

9. Venue in this District is proper in that the defendants transact business here, and the acts and transactions occurred here.

## FACTUAL ALLEGATIONS

10. On at least 3 occasions on 1/26/2018 from 201-215-3740 and 5/7/2018 from 972-210-0196 and on 5/9/2018 from 865-205-9397 all to 615-331-7262, the Plaintiff recieved multiple unwanted phone calls from call center agents doing live transfers to Defendants National Association for Medical and Dental (NAFMD) and Health Care National Marketing, Inc. (HCNM) at the request and direction of executives Sherri Faith Paules, Tommie Lane, and Christine Lane. The products and paperwork indicated that the calls were on behalf of Defendant NAFMD, but the credit card charge was processed to Health Care National Marketing.

11. Even after doing a chargeback dispute with the Plaintiff's credit card, which was disputed on 3/2/2018, the Plaintiff recieved multiple additional calls in May of 2018.

12. These programs were pitched as a dental savings program and are the subject of a multitude of consumer complaints.

13. Each and every call was placed by an automated telephone dialing system and the agents failed to state the name of the entity on whose behalf the calls were being placed. Each call as placed to the Plaintiff's cell phone without consent from the Plaintiff or any sort of emergency purpose. The agents were not trained on the use of an internal do-not-call list and the entities that placed the calls failed to maintain an internal do-not-call list.

14. Indicates of an ATDS were a audible tone when the calls connected and 3-4 seconds of dead air when the calls connected.

15. Absent discovery, the identification of any 3rd party telemarketers, calling records from the defendants, and all caller ID numbers used, it is not clear at this point the total number of calls. It is clear, however that the Plaintiff recieved at least 3 calls by or on behalf of the corporate defendants listed in this case.

16. Based on the beeps, and dead air at the beginning of the calls the Plaintiff determined that the calls were placed using an automated telephone dialing system.

**The Plaintiff's Cell phone is a residential line**

17. The text messages were to the Plaintiff's cellular phonne 615-331-7262, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## Theories of Liability

18. As these parties stand to profit and benefit from the Plaintiff's enrollment in these programs, they are vicariously liable for the calls as a seller, as defined by the TCPA, even if they didn't directly place the calls to the Plaintiff. For each and every call determined to be placed directly by the companies, they are obviously directly liable for those calls.

19. These phone calls violated the TCPA in two ways, first by placing multiple automated telephone calls to the Plaintiff's cell phone in violation of 47 USC 227(b), and second by not conforming to the requirements of 47 USC 227(c)(5) and the FCC's rulemaking authority under 47 CFR 64.1200(d), which requires the defendants to have a written policy for maintaining a do-not-call list, failure to train agents and personnel engaged in telemarketing on the use of the do-not-call list, and the failure to identify

the party placing the call or the entity for which the call is being placed. Each of the Defendants are jointly liable to the Plaintiff in the amount of $3,000 per call made, $1500 for violating 47 USC 227(b) and $1500 for violating 47 USC 227(c)(5). Additionally, each product offered by each company represents a new cause of action entitling the Plaintiff to $3,000 per call per defendant.

20. The Plaintiff alleges direct, vicarious, joint, and several liability for the listed corporations. Additionally, the officers of the corporations have a direct role in the illegal conduct, authorizing it and ratifying the illegal telephone calls.

21. The officers of each and every listed corporation had direct, personal conduct in authorizing the telephone calls or oversaw and directed the telemarketing efforts for which their corporations benefitted. The officers set company policy and directed the marketing efforts of the respective companies.

22. Obviously given 2 credit card disputes from the Plaintiff against the corporate defendants, they should have been aware that robocalling was being done on their behalf and directed at the Plaintiff, and the Plaintiff did not want any further calls.

23. Although the agents did not properly state the names of the corporations they were calling on behalf of, they did state the specific products they were selling and websites the entities used. Based on this information, the

Plaintiff was able to determine that the corporate defendants were involved.

## ACTUAL AUTHORITY

24. All of the Defendants contracted formally with a 3rd party telemarketer to initiated calls using an automated telephone dialing system to sell the products of the aforementioned defendants. All of the Defendants desired that their 3rd party telemarketers initiate calls to individuals, including the Plaintiff to sell their products. The 3rd party telemarketers were acting as the formal agents of each and every defendant.

25. In making these calls, the 3rd party telemarketers were performing in accodance with a contract and at the request of defendants to make robocalls to sell products to consumers.

## APPARENT AUTHORITY

26. The 3rd party telemarketers in this case with or without a formal contract believed and were directed to act on behalf of Defendants to make robocalls. There is simply no other reasonable explaination for why they would incur the expense and time to make robocalls unless it was being done with the belief they were acting on behalf of Defendants.

## RATIFICATION

27. The Defendants affirmed by making payments and celebrating the sales and robocalling efforts of their 3rd party telemarketers in placing calls to the consumers, including the Plaintiff. By continuing to do business with telemarketers after being sued by the Plaintiff twice, the Defendants

ratified the conduct of the telemarketers. All of the Defendants knew their telemarketers were breaking the law and similarly continued to accept the sales and pay comissions to their agents that were violating the TCPA.

28. The Plaintiff need not peirce the corporate veil to hold a corporate manager liable. It is merely required that the corporate manager turn a blind eye or fail to take reasonable steps to stop the illegal conduct from happening. In this case, the Defendants knew that illegal robocalls were being placed on their behalf and refused to take any action to stop them from happening. Had the defendants stopped using illegal telemarketers, the Plaintiff would have not been called by them.

### Actual Damages

29. The Plaintiff has suffered actual damages in the form of the trial enrollment fees charged o $34.95.

30. Additionally, the Plaintiff has suffered annoyance, frustruation, anger, loss of enjoyment of his cell phone use, reduced battery life, reduced data plan, of his cell phone due to the calls.

### CAUSES OF ACTION:

### COUNT I

### Violations of the Telephone Consumer Protection Act (TCPA)

31. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

32. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by using an autoated telephone dialing system to place calls to the Plaintiff's cell phone in violation of 47 USC 227(b). This entitles the Plaintiff to recover $1500 per call.

## CAUSES OF ACTION:

## COUNT II

### Violations of the Telephone Consumer Protection Act (TCPA)

33. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

34. The foregoing actions by the Defendants constitute multiple breaches of the TCPA by 47 USC 227(c)(5) by way of 47 CFR 64.1200(d) and failed to comply with the requirements to maintain and train employees on the use of a do-not-call list.

## COUNT III

### Invasion of Privacy

35. Plaintiff Cunningham incorporates by reference all of the above paragraphs of this complaint as though fully stated herein.

36. The foregoing actions by the Defendants constitute multiple breaches of the Plaintiff's privacy and right to be left alone.

## PRAYER FOR DAMAGES AND RELIEFS

A. WHEREFORE, Plaintiff, Cunningham, respectfully prays and requests that judgment be entered against each and every defendant for the following:

B. Statutory damages of $3000 for each phone call for each defendant mentioned in the call

C. Actual damages as determined at trial

D. Pre-judgment interest from the date of the phone calls

E. Attorney's fees for bringing this action; and

F. Costs of bringing this action; and

G. For such other and further relief as the Court may deem just and proper

I, Craig Cunningham, Affiant, hereby attest to and certify that the facts contained in the foregoing complaint are true and correct to the best of my knowledge, information and belief and that a true and correct copy of the foregoing was sent to the defendants in this case.

Respectfully submitted 6/29/2018

Craig Cunningham Plaintiff, Pro-se, 615-348-1977

3000 Custer Road, ste 270-206 Plano, Tx 75075